IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUSTIN EDWARD LIGHTFEATHER,<br><br>Plaintiff,<br><br>vs.<br><br>KEN PREY, Administrator; BRAD JOHNSON, Director of Administrations; MR. CRAPO, Religous Cordnator; OFFICER SPEKA; JENKINS, A.P.R.N.; STEPHENIE LAST NAME UNKNOWN, Mental Health LMHP; LINTON N. BAKER, Inmate; ROBERT HAZE, Inmate; TRAVIS GOLDEN, Inmate; CORNILEOUS WEAVER, Inmate; JOHN THOMSON, Inmate; and DAWNING, Officer, All in Their Individual Capacities,<br><br>Defendants. | **8:21CV211**<br><br><br><br>**MEMORANDUM AND ORDER** |

    Plaintiff, who claims to be a "bi-racial indigenous Choctaw native American," is currently incarcerated at the Lancaster County Jail as a pretrial detainee.[1] (Filing 1 at CM/ECF p. 8.) The court has granted Plaintiff permission to proceed in forma pauperis (Filing 13), and the court now conducts an initial review of the Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

---

[1] *See State v. Lightfeather*, Case No. CR 21 1243 in the District Court of Lancaster County, Nebraska, at https://www.nebraska.gov/justice/case.cgi.

## I. SUMMARY OF COMPLAINT

Plaintiff makes the following factual allegations against the following Defendants:

<u>No Defendant Named</u>: Plaintiff was placed in "segregation isolation" from July 2, 2020, to June 1, 2021, causing dehumanization, desensitization, psychological instability, identity conflicts, and two unreported suicide attempts in Plaintiff's cell. (Filing 1 at CM/ECF p. 4, 6.) During such isolation, Plaintiff has been "undergoing harsh racial discrimination for being the color white, but the race Choctaw." (*Id*. at p. 10.)

<u>Unidentified "Officers"</u>: Plaintiff has been "racially discriminated against with verbal abuse," such as being called a "fake Indian" who uses a "fake language" and being instructed to "turn your life over to Christ" and "read the Bible." (*Id*. at p. 4 (capitalization corrected).) Officers allegedly shamed and challenged Plaintiff's use of the Choctaw language. (*Id*.) The verbal abuse directed at Plaintiff caused the unnamed officers to issue misconduct reports to Plaintiff after he reacted in anger, frustration, and "emotional stress." (*Id*. at p. 6.)

<u>APRN Jenkins</u>: Plaintiff participated in "psych visits" with Jenkins from October to December 2020, during which Jenkins allegedly asked him if he was "delusional" when he stated that his grandfather was a Choctaw code talker and that Plaintiff was a Native American. Jenkins prescribed Plaintiff medications that Plaintiff felt he did not need because he was not delusional. (*Id*. at p. 5.) Plaintiff continued to be kept in segregation upon Jenkins's recommendation based on Plaintiff's refusal to take medication.

<u>Mr. Crapo</u>:  Crapo, who is alleged to be a religious coordinator, supposedly denied Plaintiff's requests for a white bandana to represent his "indigenous belief system" and a "Buddhist bind book to study while my relief is pending" because, according to Crapo, the bandana was related to indigenous gang activity and the only books allowed in segregation are Bibles. (*Id*. at pp. 3, 7.)

2

<u>LMHP Stephenie:</u> Stephenie treated inmates in the segregation unit on a weekly basis. In response to Plaintiff's frustration with Defendant Crapo, who Plaintiff felt was denying him his right to worship, Stephenie supposedly told Plaintiff that "Christ is the only way to salvation." (*Id*. at p. 8.)

<u>Unspecified "Inmates":</u> Unnamed "inmates" called Plaintiff a "fake Indian" and threatened to beat him up.

<u>Officer Dawning:</u> Dawning called Plaintiff a "fake Indian," after which Plaintiff punched him. A Lincoln Police Department officer came to visit Plaintiff after the incident, but decided not to ticket him after Plaintiff explained what happened and after a "larger investigation" concluded that Officer Dawning racially targeted Plaintiff. (*Id*. at p. 9.)

<u>Defendant Baker:</u> Inmate Baker sprayed a bag of his bodily fluids all over Plaintiff while calling him a "fake Indian" and "autistic bitch." Baker was later criminally charged. (*Id*. at pp. 9-10.)

Plaintiff purports to make claims under the "Indigenous Dawes Act"; 42 U.S.C. § 1983 (Fourteenth Amendment race discrimination; Eighth Amendment cruel and unusual punishment; First Amendment free exercise of religion); and 42 U.S.C. § 12101. (Filing 1 at CM/ECF p. 2.) For relief, Plaintiff requests "[h]abeas corpus prisoner relief mandatory injunction" due to "immediate danger by other non-indigenous inmates"; reinstatement of State of Nebraska developmental disability services for his autism; and a white bandana for purity and a "Buddhist bind book." (Filing 1 at CM/ECF p. 3 (spelling corrected).

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28

3

U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

**A. Dawes Act**

Plaintiff purports to assert a claim under the Dawes Act, 25 U.S.C. §§ 331, *et seq.*, which was enacted in 1887 "to prevent alienation of Indian-owned lands by replacing the fee-simple-ownership of early allotments with a trust-based model in which the President allotted tracts to individual Indian landowners." *Chase v. Andeavor Logistics, L.P.*, 12 F.4th 864, 873 (8th Cir. 2021). The Dawes Act "resulted in much of the reservation land becoming privately owned land, thereby creating a 'checkerboard' of trust land and private land." *F.T.C. v. Payday Fin., LLC*,

4

935 F. Supp. 2d 926, 930 (D.S.D. 2013). The Dawes Act was repealed by the Indian Land Consolidation Act Amendments of 2000, Pub. L. No. 106-462, §§ 101-103, 114 Stat. 1991. *Chase*, 12 F.4th at 873 n.5.

Because the Dawes Act has no relationship whatsoever to the factual allegations at issue, Plaintiff fails to state a claim upon which relief can be granted under this Act. Plaintiff's purported claims under the Dawes Act will be dismissed without leave to amend because amendment would be futile.

### B.  42 U.S.C. § 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the United States Constitution or laws of the United States. 42 U.S.C. § 1983. Here, Plaintiff raises claims under the Fourteenth Amendment (race discrimination), Eighth Amendment (cruel and unusual punishment), and the First Amendment (free exercise of religion).

#### 1.  Fourteenth Amendment

##### a.  Race Discrimination

Plaintiff alleges that mostly unidentified "officers" and inmates discriminated against him based on his bi-racial Choctaw heritage when they verbally abused him, called him names, threatened him, discounted his chosen religion by telling him to read the Bible and accept Christ, and accused him of being delusional when he claimed to be Choctaw. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994), *citing City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Thus, the first step in an

5

equal protection case is determining whether the plaintiff has demonstrated that []he was treated differently than others who were similarly situated to h[im]." *Id*. "Absent a threshold showing that []he is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id*.

*In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018) ("'[d]issimilar treatment of dissimilarly situated persons does not violate equal protection'") (quoting *Klinger*, 31 F.3d at 731); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (for equal protection claim, prisoner must show that he is treated differently than similarly situated inmates and that the different treatment is based on suspect classification or a fundamental right).

An equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d at 910; *see also Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) ("In the absence of any allegations of intentional discrimination, we therefore concluded the Equal Protection Clause did not provide a ground for relief for appellant's section 1983 race discrimination claim."); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (unequal treatment of persons entitled to be treated alike is not denial of equal protection unless intentional or purposeful discrimination is shown).

Here, none of Plaintiff's allegations suggest that he was treated differently from inmates who were similarly situated to him. Without such allegations, Plaintiff has failed to state a Fourteenth Amendment race discrimination claim upon which relief can be granted. Further, Plaintiff improperly attempts to assert section 1983 claims against fellow inmates because Plaintiff's allegations do not indicate that they are state actors. *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (explaining limited circumstances in which private actors may be liable under section 1983); *Clark v. Ellis*, No. 4:11-CV-00135, 2011 WL 4572013, at *2 (E.D. Ark. May 26, 2011), *report and recommendation adopted,* No. 4:11CV00135, 2011 WL 4591871 (E.D. Ark. Oct. 4, 2011) ("private individuals such as the White County inmates can not be sued in a § 1983 action because they are not state actors"); *Wewerka v. Roper*, No. 4:09CV1973, 2010 WL 908472, at *2 (E.D. Mo. Mar. 9,

6

2010) (section 1983 claims against inmate defendants did not survive initial review because inmates were not state actors and could not be sued under section 1983).

### b. Substantive Due Process

Plaintiff complains that unidentified Defendants placed him in "segregation isolation" from July 2, 2020, to June 1, 2021, thereby violating his right to substantive due process. To meet the "very heavy burden," *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015), of establishing a violation of Plaintiff's right to substantive due process arising under the Fourteenth Amendment, "the plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Norris v. Engles*, 494 F.3d 634, 638 (8th Cir. 2007) (internal quotation marks and citations omitted).

First, because Plaintiff fails to name the Defendants who were responsible for his placement in segregation, he fails to state a claim. *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *12 (D. Neb. Sept. 16, 2019) (because pretrial-detainee plaintiff had "not identified any individual defendant who was responsible for placing him in solitary confinement [,] . . . there is no actionable claim"). Second, other than experiencing name-calling and verbal abuse by mostly unidentified "officers" and "inmates," Plaintiff makes little attempt to allege facts indicating that his placement in segregation was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,'" such as allegations regarding the events preceding his placement in segregation, the alleged reasons for his placement, and the conditions he experienced while in segregation. *Hall*, 801 F.3d at 917 (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847-48 n. 8 (1998)); *see also Lewis*, 486 F.3d at 1028 ("Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination unless it is pervasive or severe enough to amount to racial harassment." (internal quotation marks and citation omitted)); *Doe v. Gooden*, 214

7

F.3d 952, 955 (8th Cir. 2000) (using demeaning, belittling, and offensive language with elementary school students did not violate students' constitutional rights); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983."); *Dan v. Douglas Cty.*, No. 8:18CV31, 2018 WL 3609539, at *7 (D. Neb. July 27, 2018) ("Verbal abuse and name calling by a prison guard are not usually actionable under section 1983."); *Quevedo-Andretti v. Nebraska Dep't of Health & Hum. Servs.*, No. 8:15CV31, 2015 WL 6142954, at *4 (D. Neb. Oct. 19, 2015) ("While Plaintiff's alleged exposure to racial slurs and offensive language is unfortunate, it does not state a claim of constitutional dimension."); *Abram v. McKillip*, No. 4:14CV3113, 2014 WL 7408254, at *2 (D. Neb. Dec. 30, 2014) ("taunts, threats, name calling, and the use of offensive language do not state a claim of constitutional dimension").

Thus, Plaintiff fails to state a substantive due process claim under the Fourteenth Amendment. *See Benson v. Piper*, No. 17-CV-266, 2019 WL 2017319, at *26 (D. Minn. Jan. 25, 2019), *report and recommendation adopted,* No. CV 17-266, 2019 WL 1307883 (D. Minn. Mar. 22, 2019) (recommending dismissal of substantive due process claim brought by involuntarily committed sex offender who alleged he was unjustifiably placed in a high-security area because such allegations did "not rise to the level of being so severely egregious or outrageous as to demonstrate a brutal and inhumane abuse of power shocking to the conscience").

### 2. Eighth Amendment Cruel & Unusual Punishment

A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment's prohibition against cruel and unusual punishment, while a pretrial detainee's challenge to such conditions is analyzed under the due process clause of the Fourteenth Amendment with respect to state actors. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). Plaintiff's due process claim under the Fourteenth Amendment has been addressed above and will not be repeated here.

### 3. First Amendment Free Exercise of Religion

To establish a free-exercise claim, the disputed rule or regulation must first place a "substantial burden" on the Plaintiff's ability to practice his religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). "Substantially burdening one's free exercise of religion means that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."

*Patel*, 515 F.3d at 813 (internal quotation marks and citation omitted).

Here, Plaintiff alleges only that he desires a white bandana to represent his "indigenous belief system" and a "Buddhist bind book to study while my relief is pending," and Defendant Crapo refused to give him such items. Plaintiff does not allege facts indicating how the lack of such items significantly inhibited the expression of a central tenet of his religious beliefs, curtailed his ability to adhere to his faith, or denied him reasonable opportunities to engage in activities that were fundamental to his religion. *Id*. For instance, Plaintiff's Complaint does not describe the nature of his religious beliefs and how possession of a white bandana and a particular book is central to those beliefs. Further, it is not clear how Plaintiff was permitted to exercise his religious beliefs without having a white bandana and Buddhist bind book.

Hence, Plaintiff has failed to state a free-exercise claim under the First Amendment.

### C. 42 U.S.C. § 12101

Plaintiff attempts to present a "disability rights" claim under 42 U.S.C. § 12101. (Filing 1, CM/ECF p. 2.) This statute contains congressional findings and a

9

statement of purpose for enactment of the Americans with Disabilities Act of 1990 ("ADA"). The statement of purpose, in and of itself, does not give rise to a private right of action. "The Act is not a general protection of medically afflicted persons." *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997). The Eighth Circuit Court of Appeals has also held that "Title II of the ADA provides a detailed remedial scheme barring a § 1983 action against state officials in their individual capacities." *Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) (citing *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1011 (8th Cir. 1999) (en banc)). Here, all Defendants are sued in their individual capacities. *Lightfeather v. Green*, No. 8:21CV208, 2021 WL 3930274, at *2 (D. Neb. Sept. 2, 2021).

To the extent Plaintiff claims his state disability benefits were wrongly terminated under the ADA, Plaintiff has already raised this claim in at least one of his many prior cases, *Lightfeather v. U.S. Bank Corp.*, No. 8:21CV146, 2021 WL 3784324, at *3 (D. Neb. Aug. 26, 2021), and the claim will not be addressed again. *See Lightfeather v. Green*, No. 8:21CV208, 2021 WL 3930274, at *3 (D. Neb. Sept. 2, 2021) (section 1915(e)(2) allows this court to dismiss a duplicative complaint that raises issues that are directly related to issues in another pending action brought by the same party) (citing *Aziz v. Burrows*, 976 F.2d 1158 (8th Cir. 1992)).

Plaintiff's purported claims under the ADA will be dismissed without leave to amend because amendment would be futile.

### D.  Other Deficiencies

Plaintiff claims he wants "habeas relief," but such relief is not available in a 42 U.S.C. § 1983 action. *Lightfeather v. Green*, No. 8:21CV208, 2021 WL 3930274, at *3 (D. Neb. Sept. 2, 2021). Therefore, Plaintiff's request for such relief will be denied.

Although Plaintiff names Defendants Prey, Johnson, Speka, Haze, Golden, Weaver, and Thomson in his case caption, he makes no allegations against them in

the body of the Complaint. Therefore, Plaintiff has failed to allege a 42 U.S.C. § 1983 claim against Defendants Prey, Johnson, Speka, Haze, Golden, Weaver, and Thomson because Plaintiff does not explain how these Defendants' own individual actions violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (to assert a section 1983 claim, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) ("a person may be held personally liable for a constitutional violation only if his own conduct violated a clearly established constitutional right" (internal quotation marks and citation omitted)); *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." (citation omitted)); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed a pro se complaint where the complaint did not allege that defendant committed a specific act and the complaint was silent as to defendant except for his name appearing in caption)).

Finally, and as explained above, Plaintiff fails to state section 1983 claims against fellow inmates Baker, Haze, Golden, Weaver, and Thomson because Plaintiff does not allege facts indicating that they are state actors. *Magee*, 747 F.3d at 536; *Clark*, 2011 WL 4572013, at *2; *Wewerka*, 2010 WL 908472, at *2.

## IV. CONCLUSION

In its present form, Plaintiff's Complaint fails to state a claim against any Defendant. However, on the court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states a claim. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1. Plaintiff's Motion to Correct Defendants' Names (Filing 11) is granted, and the Clerk of Court shall correct the case caption on the docket sheet to mirror the case caption appearing on this Memorandum and Order, which incorporates Plaintiff's requested changes.

2. Plaintiff's purported claims under the Dawes Act and the Americans with Disabilities Act, and his request for habeas relief, are dismissed without leave to amend because such amendments would be futile.

3. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Such amended complaint shall **not** contain claims asserted under the Dawes Act and the Americans with Disabilities Act or request habeas relief. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must set forth all of Plaintiff's claims (and any supporting factual allegations) against each Defendant. Plaintiff should be mindful to explain in his amended complaint what each Defendant did to him, when each Defendant did it, and how each Defendant's actions harmed him. Plaintiff shall make every effort to name the Defendants by first **and** last name so that service of process can occur, if warranted.

4. In the event Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into **one document** may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

5. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

6.      The Clerk of the Court is directed to set a pro se case management deadline using the following text: April 4, 2022—amended complaint due.

7.      Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this 3rd day of March, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge